**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Bernard McFadden, 199135, )<br>)<br>PLAINTIFF, )<br>)<br>vs. )<br>)<br>)<br>Edward Bittinger, Captain and/or )<br>Disciplinary Hearing Officer of Kershaw CI; )<br>Tony Smith, Captain of Kershaw CI; in )<br>their individual or personal capacities; )<br>)<br>DEFENDANTS. )<br>_____ ) | C/A No. 2:15-CV-02507-JMC-MGB<br><br><br><br><br>REPORT AND RECOMMENDATION<br>OF THE MAGISTRATE JUDGE |

The Plaintiff brings this action under Title 42, United States Code, Section 1983 for retaliation against him for exercising his First Amendment rights and for violation of his right to equal protection. Currently before the court are the Defendants' Motion to Dismiss under Rules 37 and 41, Fed R. Civ. P. (Dkt. No. 39) and the Motion for Summary Judgment of Defendants. (Dkt. No. 43.) Under Local Civil Rule 73.02(B)(2) of the United States District Court for the District of South Carolina, pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge.

The Plaintiff brought this action on June 23, 2015. (Dkt. No. 1.) The Plaintiff filed multiple motions to compel. (Dkt. Nos. 27, 36, 42, 46, 50.) These motions were found to be moot, granted in part, and denied in part. (Dkt. Nos. 31, 53, 56.) On April 19, 2016, the Defendants' Motion to Dismiss under Rules 37 and 41, Fed R. Civ. P. (Dkt. No. 39) was filed. On the same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately

1

respond to the motion. (Dkt. No. 40.) The Plaintiff responded to the motion to dismiss on May 25, 2016. (Dkt. No. 47.) The Defendants replied to the Plaintiff's response on June 2, 2016. (Dkt. No. 49.)

The Motion for Partial Summary Judgment for Defendants was filed on April 29, 2016. (Dkt. No. 43.) On the same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 44.) The Plaintiff filed an affidavit and response to the motion for summary judgment of June 13, 2016. (Dkt. No. 51.) After ruling on several motions to compel, the court allowed the Plaintiff to supplement his responses to the Motion to Dismiss and the Motion for Summary Judgment, which he did on December 12, 2016.[1] (Dkt. No. 59.) The Defendants replied on December 19, 2016. (Dkt. No. 60.) The Plaintiff filed a sur-reply on January 3, 2017. (Dkt. No. 61.)

## RELEVANT FACTS

The Plaintiff was incarcerated at Kershaw Correctional Institution ("KCI") at all times relevant to the Complaint. (Dkt. No. 1.) The Plaintiff is African American. The Plaintiff alleges that on Tuesday, March 11, 2014, the Plaintiff requested that Officer Nathan Branham[2] make copies for him to file before a discovery deadline in *McFadden v. Fuller et al.,* 5:13-cv-2290-JMC-KDW ("*Fuller*"). (*Id.* at 3.) Officer Branham was the correctional officer assigned to the law library at KCI. (*Id.*; Dkt. No. 43-8) Officer Branham reminded the Plaintiff that KCI policy required all requests for copies to be made on Wednesdays. (Dkt. No. 43-3 ¶ 2.) Exceptions were made to the Wednesday rule only if an inmate faced a court deadline that would not allow

---

[1] The Plaintiff's filing on December 12, 2016, includes several pages are labeled as objections to the undersigned Magistrate Judge's rulings on his motions to compel.
[2] Officer Branham is not a defendant.

them to request copies the following Wednesday. (*Id.*) The Plaintiff told Officer Branham that he faced a deadline that required waiver of the Wednesday rule. (*Id.*) Officer Branham then requested proof of the deadline, and the Plaintiff produced a copy of the Scheduling Order in *Fuller* located at Dkt. No. 76 in *Fuller*. The Scheduling Order required that discovery be completed no later than April 18, 2014, and that "all discovery requests shall be served in time for the responses thereto to be served by [April 18, 2014]." *See Fuller* at Dkt. No. 76. Because the Plaintiff's deadline was over a month away, Officer Branham charged the Plaintiff with SCDC Offense Code 847, Abuse of Privileges, as a result of misrepresenting the deadline. (Dkt. No. 43-3 at ¶¶ 5-6; Dkt. No. 1 at 3.)

The Plaintiff alleges, and the Defendant agrees, that the Plaintiff has filed numerous suits in this court. (Dkt. No. 1 at 3.) The Plaintiff alleges that his legal filings were well known among inmates and staff at KCI, including the Defendants and Officer Branham. (*Id.* at 3-4.)

A charge against an inmate for a violation of prison discipline can be resolved in one of three ways, at SCDC's option: by informal resolution, by administrative resolution, or by a disciplinary hearing. Under the informal and administrative models, the charge is heard by the Responsible Authority. The primary difference between an informal resolution and an administrative resolution relates to the concept of "good time." Under an informal resolution, if the Responsible Authority determines the offense was committed, the prisoner may receive sanctions, but he will not lose or fail to earn good time (if he is otherwise eligible to do so). Under an administrative resolution, the inmate may receive sanctions and fail to earn any good time for the month in which the event occurs (although the inmate will not lose any existing good time that he has already accrued). If he so desires, an inmate may reject both informal and administrative resolution and elect to have the charge heard by an SCDC Hearing Officer. If the

3

Hearing Officer determines the charged offense was committed, he may impose stiffer sanctions than either an informal or administrative resolution. In addition, the Hearing Officer is empowered to take away accrued credit for good time earned. (*See* Dkt. Nos. 43-11, SCDC Policy OP-22_14, Inmate Disciplinary System; 43-12, Affidavit of Captain Tony Smith).

Defendant Smith was a "Responsible Authority" under the SCDC Inmate Discipline Policy. (Dkt. No. 43-12.) On March 14, 2014, Defendant Smith offered the Plaintiff the option of an administrative resolution to his charge consisting of the loss of privileges for ten (10) days and loss of twenty (20) days of good time credit.[3] (Dkt. No. 1 at 4.) The Plaintiff did not accept the offer.

On the same day, Defendant Smith offered to allow Norman Olsen and Dennis Brown, two white inmates, to informally resolve their disciplinary charge with 15 hours of extra duty. (Dkt. No. 1 at 4-5; Dkt. No. 43-12 ¶¶ 7, 9.) Olsen and Brown were charged with SCDC Offense Code 817, Possession of Contraband, a more severe offense than the Plaintiff's offense. (Dkt. No. 1 at 4.) The Plaintiff alleges that he was offered a harsher sanction for his lesser charge in retaliation for his legal activities and because of his race. (Dkt. No. 1 at 4.)

On March 24, 2014, the Plaintiff's charge was heard by an SCDC Hearing Officer, Defendant Bittinger. (Dkt. No. 43-13.) Defendant Bittinger sanctioned the Plaintiff with loss of canteen for ninety (90) days, loss of visitation for ninety (90) days, and loss of telephone for ninety (90) days. (*Id.;* Dkt. No. 1 at 4.) The Plaintiff alleges that Defendants Bittinger and Smith assessed the sanctions on the Plaintiff in retaliation for his legal activities in violation of his First and Fourteenth Amendment rights. The Plaintiff filed a grievance the following day appealing

---

[3] Defendant Smith's affidavit states that the offer consisted of the loss of television, visitation, and canteen privileges for ten (10) days "along with the proviso that, if eligible to earn good time, [the Plaintiff] would earn no good time for the month of March 2014." (Dkt. No. 43-12 ¶ 5.)

4

his sanctions. (Dkt. No. 43-14.) On April 15, 2014, Warden Cecilia Reynolds overturned the charge and sanctions against the Plaintiff. (Dkt. No. 43-15.)

## **Plaintiff's Claims**

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); *see also Gomez v. Toledo*, 446 U.S. 635, 540 (1983); *Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980). In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

The Complaint brings suit under 42 U.S.C. §1983 alleging that Defendants Bittinger and Smith retaliated against the Plaintiff in violation of his First and Fourteenth Amendment rights because of his exercise of his right to access the courts. (Dkt. No. 1; *see also* Dkt. No. 51 at 19.) The Plaintiff additionally alleges that Defendant Smith discriminated against him because of his race and retaliated against him by offering him a stiffer sanction than was offered to two white inmates charged with a more serious offense. (Dkt. No. 1; *see also* Dkt. No. 51 at 19.) The Plaintiff explicitly does not bring any claim for the denial of his right to access the courts. (Dkt. No. 51 at 19.)

## **Motion for Summary Judgment of Defendants (Dkt. No. 43.)**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are

5

'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

1. **Retaliation Claim**

In viewing the evidence in the light most favorable to the Plaintiff, no genuine issue of material fact exists as to the Plaintiff's retaliation claim, and the Defendants are entitled to judgment as a matter of law.  To recover for First Amendment retaliation, a plaintiff must show that (1) he engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *see also Booker v. S.C. Dep't of Corr.*, 583 Fed. App'x. 43, 44 (4th Cir. 2014) (providing these elements in the context of a retaliation claim brought by an inmate plaintiff).

Regarding the first prong, Plaintiff alleges that he was charged and sanctioned as a result of his frequent litigation, particularly in regards to his lawsuit concerning KCI serving illegally adulterated poultry. (Dkt. No. 51 at 9.) The court agrees that the Plaintiff's right to access the courts is a cognizable right for purposes of a First Amendment retaliation claim and, as such, satisfies the first element of this analysis. *See McFadden v. Lewis*, 517 Fed.Appx. 149, 150 (4th Cir. 2013) (*citing Hudspeth v. Figgins*, 584 F.2d 1345, 1347–48 (4th Cir. 1978)) ("Retaliation against an inmate for the exercise of his right to access the courts states a cognizable claim.").

Regarding the second prong, there is no evidence in the record that the Defendants took any action that adversely affected the Defendant's First Amendment rights. "First Amendment retaliation is actionable because 'retaliatory actions may tend to chill individuals' exercise of constitutional rights.'" *Constantine*, 411 F.3d at 500 (quoting *ACLU of Md., Inc. v. Wicomico County, Md.,* 999 F.2d 780, 785 (4th Cir.1993)). "Not all retaliatory conduct tends to chill First Amendment activity, however, *DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir.1995), and a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a '*de minimis* inconvenience' to her exercise of First Amendment rights, *ACLU of Md.,* 999 F.2d at 786 n. 6." *Constantine*, 411 F.3d at 500.  "[F]or purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Id.; see also McFadden v. Lewis,* 517 F. App'x 149, 150 (4th Cir. 2013) ("The prisoner need not succumb entirely or even partially to the threat; it is sufficient that the retaliation was intended to limit the prisoner's right of access to the court and was reasonably calculated to have that effect.")

> **The plaintiff must allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access**

> **the courts and show that he suffered more than *de minimis* inconvenience.** The prisoner need not succumb entirely or even partially to the threat; it is sufficient that the retaliation was intended to limit the prisoner's right of access to the court and was reasonably calculated to have that effect. However, the plaintiff must allege specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension.

*Shaw v. Rogers*, No. 9:16-CV-01122-RBH, 2016 WL 4055026, at *5 (D.S.C. July 29, 2016) (quoting *Goodman v. Smith*, 58 Fed. App'x. 36, 37-38 (4th Cir. 2003)) (emphasis added in *Shaw*).

The record does not contain any facts beyond the Plaintiff's bare assertions that the Defendants took any act to infringe on the Plaintiff's rights. Neither of the Defendants in this case actually charged the Plaintiff. The Plaintiff essentially asserts that the Defendants' actions of offering to work out the Plaintiff's charge (Smith) and then holding a disciplinary hearing and finding him guilty (Bittinger) somehow infringed on his First Amendment rights. There is no evidence that the Defendants intended to limit the Plaintiff's right of access to the court or that their conduct was reasonably calculated to have that effect.  The sanctions ordered by Defendant Bittinger did not limit the Plaintiff's access to paper, mail, the law library, copies, or any other resource related to his access to courts.

Additionally, the record is uncontradicted that the Plaintiff suffered no more the *de minimis* inconvenience. The Plaintiff's disciplinary conviction occurred on March 24, 2014, and was overturned on April 15, 2014.  (Dkt. Nos. 43-13; 43-15.) During the three weeks that his conviction stood, the Plaintiff accessed the law library on March 25, 26, 27, 28, and 31 as well as April 1, 3, 4, 7, 8, 9, 10, 11, 14 and 15. (Dkt. No. 43-5 at 41-51, 78-82.)  The Plaintiff made at

least three different filings in this court during that time period as well.[4] There is no evidence that the Plaintiff suffered any chilling effect due to the Defendants' actions.

Regarding the final prong, that "there was a causal relationship between [his] protected activity and the defendants' conduct." *Constantine*, 411 F.3d at 499, there are no facts in the record to link the Defendants' conduct to the Plaintiff's First Amendment activity. Assuming *arguendo* that the Defendants did somehow act to infringe on the Plaintiff's First Amendment rights, there is no evidence of a causal link to his legal activities beyond the Plaintiff's conclusory assertions. The Plaintiff argues that his request for copies related to his "effort to timely file discovery to allow additional discovery request[s] to expose SCDC's crime of transporting, storing, and serving adulterated poultry—in violation of federal criminal codes 21 U.S.C.A § 321 and § 458." (Dkt. No. 51 at 2.) The Plaintiff further alleges that "when each Defendant realized my effort to expose SCDC/Kershaw's crime in *McFadden v. Fuller*, they rejected [my grievance] and found me guilty, punishing me for requesting copies by taking away privileges and offering and ordering (20) extra days[5] in prison." (*Id.*) The Plaintiff's argument that his disciplinary charge was related to his efforts in *Fuller* is not supported by any evidence outside of his bare assertion as to what was going on in the Defendant's minds. There is nothing in the record to support that the Defendants were motivated by the desire to silence the Plaintiff's

---

[4] In *McFadden v. Wesley,* 0:12-23-92-JMC-PJG, the Plaintiff filed an "Affidavit and Memorandum in Opposition to Defendants' Motion for Summary Judgment Dated 03/24/2014" with his signature notarized on March 27, 2014; the filing is docket number 92. In *McFadden v. York*, 8:13-cv-2278-JMC-JDA, the Plaintiff filed an "Affidavit and Motion for Continuance to Defendant's Motion For Dismiss on Behalf of Defendant Gaston Dated 3/19/14" with his signature notarized on April 4, 2014; the filing is docket number 72. In *McFadden v. Fuller*, 5:13-2280-JMC-KDW the Plaintiff filed a "Declaration and Motion to Compel Defendant Fuller's Answers and Responses to Plaintiff's Interrogatories, Production and Admissions Dated 4/4/2014, Received 4/7/2014" with his signature notarized on April 15, 2014; the filing is docket number 107.
[5] There is no evidence aside from the Plaintiff's argument that he was ordered to spend twenty (20) extra days in prison, and all of his sanctions were overturned by the warden.

"effort to expose SCDC/Kershaw's crime." Additionally, the Defendants in this case did not charge the Plaintiff.

No genuine issue of material facts exists as to whether the Defendants took some action that adversely affected his First Amendment rights and whether there was a causal relationship between her protected activity and the Defendants' conduct. Additionally, there is no evidence that the Plaintiff suffered greater than *de minimis* injury. Therefore, this court concludes that the Defendants are entitled so summary judgment as a matter of law.

2. **Discrimination Based on Race**

In viewing the evidence in the light most favorable to the Plaintiff, no genuine issue of material fact exists as to the Plaintiff's claim he was discriminated against based on his race, and Defendant Smith is entitled judgment as a matter of law. The Equal Protection Clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. This provision does not mandate identical treatment for each individual; rather, it requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "To show that his equal protection right was violated, Plaintiff must demonstrate that he was treated differently from similarly situated inmates and the discrimination was intentional or purposeful." *Deleston v. Rivera*, No. 6:11-2968-DCN-KFM, 2011 WL 7040906, at *6 (D.S.C. Dec. 27, 2011), *report and recommendation adopted sub nom. Delston v. Rivera*, No. CA 6:11-2968 DCN, 2012 WL 135416 (D.S.C. Jan. 17, 2012), *aff'd sub nom. Deleston v. Rivera*, 474 F. App'x 118 (4th Cir. 2012) (citing *Williams v. Hansen,* 326 F.3d 569 (4th Cir.2003)). "In the prison context, however, even fundamental rights such as the right to equal protection are judged by a standard of reasonableness-specifically, whether the actions of prison officials are 'reasonably related to

10

legitimate penological interests.'" *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)); *see Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002).

The Plaintiff has failed to provide any evidence that he was treated any differently from similarly situated white inmates. The Plaintiff was charged by Officer Branham with SCDC Offense Code 847, Abuse of Privileges, related to having copies made in the law library. (Dkt. No. 43-3 at ¶¶ 5-6; Dkt. No. 1 at 3.) On March 14, 2014, Defendant Smith offered the Plaintiff the option of an administrative resolution to his charge consisting of the loss of privileges for ten (10) days and loss of twenty (20) days of good time credit.[6] (Dkt. No. 1 at 4.) The Plaintiff did not accept the offer.

Norman Olsen and Dennis Brown, the two white inmates, were charged with SCDC Offense Code 817, Possession of Contraband.  The basis for that charge was that Olsen and Brown, who were cellmates, were found to possess a small homemade needle and a small screwdriver. (Dkt. No. 43-12 ¶ 11; Dkt. No. 51 at 5-7.) Defendant Smith offered to informally resolve their disciplinary charge with 15 hours of extra duty. (Dkt. No. 1 at 4-5; Dkt. No. 43-12 ¶¶ 7, 9.) Olsen and Brown were charged with a more severe offense than the Plaintiff's offense. (Dkt. No. 1 at 4.) The Plaintiff alleges that he was offered a harsher sanction for his lesser charge in retaliation for his legal activities and because of his race. (Dkt. No. 1 at 4.) Olsen and Brown are not similarly situated to the Plaintiff. Olsen and Brown were charged with a different offense. *See Slappy v. Bazzle,* No. C A 0:05-0014-DCN-BM, 2005 WL 6139235, at *2 n.5 (D.S.C. Nov. 21, 2005) (holding that plaintiff's statement that inmates of another race were

---

[6] Defendant Smith's affidavit states that the offer consisted of the loss of television, visitation, and canteen privileges for ten (10) days "along with the proviso that, if eligible to earn good time, [the Plaintiff] would earn no good time for the month of March 2014." (Dkt. No. 43-12 ¶ 5.)

11

found not guilty of disciplinary charges around the same time that the plaintiff was found guilty was not sufficient to state an equal protection claim); *cf. Worley v. Bounds,* 355 F. Supp. 115, 118 (W.D.N.C. 1973) (holding that inmates were similarly situated where black inmates with children by black women were allowed to write letters to the mothers of their children but black inmates with children by white women were not allowed to write letters to the mothers of their children).

The facts supporting Olsen's and Brown's charges are very different from the facts leading to the Plaintiff's charge. As averred by Defendant Smith, Olsen and Brown's charge only affected themselves as the items taken were too small to be weapons. (Dkt. No. 43-12 ¶ 11.) In contrast, the Plaintiff's conduct occupied the law librarian's time, which resulted in that time not being available to other inmates. (*Id.* ¶ 12.) It is wholly logical that inmates who are charged with different charges based on different facts would receive different sanctions. There is no evidence that the offer to resolve the Plaintiff's charges made by Defendant Smith was racially discriminatory.

The Plaintiff has produced affidavits from other inmates in response to the motion for summary judgment. He argues that the affidavits show disparate treatment. None of the affidavits tend to show that the Plaintiff was treated differently than white inmates by Defendants Smith. The Declaration of Anthony Small and the Declaration of Marcus Woods both relate to statements made by third parties concerning the Plaintiff's prolific litigation and possible retaliation. (Dkt. No. 51-1 at 1-2, 12-13.) Neither mention anything about the Defendants or facts in this lawsuit. The Declaration of Stefen Harris and the Declaration of Freddie Puckett both relate to disciplinary charges they received for contraband and do not appear to have similar facts to the Plaintiff's case. (*Id.* at 8, 15.) For the same reasons that Olsen and Brown are not similarly

situated to the Plaintiff, Harris and Puckett are not either. The Declaration of Jimmy Campbell relates to the Plaintiff's cell assignment in March of 2011 and generally asserts that the staff at KCI retaliates against individuals who are "jailhouse lawyers." (*Id.* at 17-18.)  The declaration does not mention the Defendants in this case and does not appear to relate to the facts of this case.  None of the affidavits provided by the Plaintiff create a genuine issue of material fact.[7]

Even assuming *arguendo* that Defendant Smith's actions did infringe on the Plaintiff's right to equal protection, there is no evidence that Defendant Smith's actions were not reasonably related to legitimate penological interests. Defendant Smith asserted that Brown's and Olsen's charges were considered in the context that they were roommates and their conduct did not affect other inmates. (Dkt. No. 43-12 ¶¶ 9-11.)  Defendant Smith averred that he viewed the Plaintiff's conduct as affecting other inmates. (*Id.* at 12.)  There is no evidence to contradict Defendant Smith's explanation of his reasoning. Defendant Smith articulated a reasonable penological interest—i.e. other inmates' access to the law librarian—to explain why he offered the Plaintiff a different resolution to his charges.  This court finds that no genuine issue of material fact exists as to the Plaintiff's claim that his right to equal protection was violated, and Defendant Smith is entitled to judgment as a matter of law.

## **Defendants' Motion to Dismiss Under Rules 37 and 41 Fed. R. Civ. P.**

The Defendants moved to dismiss with prejudice based on the Plaintiff's failure to prosecute. (Dkt. No. 39.) The Defendants' motion is based on the Plaintiff's refusal to accept discovery responses. The Plaintiff admits that he did not accept the items in question. (Dkt. No.

---

[7] The Plaintiff also includes the Declaration of Noland Clark.  (Dkt. No. 59-1 at 43.) Mr. Clark states that he is not white and was charged with possessing a small, homemade screwdriver but was charged at a different offense level than Olsen and Brown.  This declaration does not contain any alleged actions taken by the Defendants in this case.  Additionally, the Plaintiff must show **he** was treated differently from similarly situated inmates by the Defendants. The Plaintiff does not have standing to recover for any constitutional violations suffered by another inmate.

47 at 1-6.) However, because the Defendants are entitled to summary judgment as a matter of law, the undersigned recommends that the district court find that the Defendants' Motion to Dismiss Under Rules 37 and 41 Fed. R. Civ. P. is moot upon adoption of this Report & Recommendation.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Motion for Summary Judgment of Defendants (Dkt. No. 43) be GRANTED. It is further RECOMMENDED that Defendants' Motion to Dismiss under Rules 37 and 41, Fed R. Civ. P. (Dkt. No. 39) be found moot upon the granting of summary judgment.

IT IS SO RECOMMENDED.

January 12, 2017

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).